UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENNIS L. MCCLOUD,

        Petitioner,

v.                                       Case No. 3:19-cv-591-MMH-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Dennis McCloud, an inmate of the Florida penal system, initiated this action on May 16, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). McCloud is proceeding on an amended petition (Amended Petition; Doc. 9). In the Amended Petition, McCloud challenges two 2010 state court (Duval County, Florida) judgments of conviction for sexual battery, lewd and lascivious molestation, and lewd and lascivious exhibition. McCloud asserts six grounds as his basis for seeking relief. See Amended Petition at 9-92.[2] Respondents oppose the Petition. See

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

Answer to Amended Petition for Writ of Habeas Corpus (Response; Doc. 11) with exhibits (Resp. Ex.). McCloud filed a brief in reply. See Answer to State's Answer to the Amended Petition for Writ of Habeas Corpus (Reply; Doc. 14). This case is ripe for review.

## II. Relevant Procedural History

In Duval County Case Number 2009-CF-14321, the State of Florida (State) charged McCloud by way of amended information with sexual battery (count one) and lewd or lascivious molestation (count two). Resp. Ex. B1 at 26. In Duval County Case Number 2009-CF-14229, the State charged McCloud with one count of lewd or lascivious exhibition. Resp. Ex. C1 at 6. The State moved to join both cases for trial, which the circuit court granted. Resp. Ex. B1 at 24. At the conclusion of the trial, the jury found McCloud guilty as charged in both cases. Resp. Exs. B1 at 55-56; C1 at 41. On November 2, 2010, the trial court sentenced McCloud in Case Number 2009-CF-14321 to a life-term of incarceration without the possibility of parole as to count one and a twenty-five-year term of incarceration as to count two, with twenty-five-year minimum mandatory sentences as to both counts. Resp. Ex. B1 at 65-71. The trial court ordered the sentences to run concurrently. Resp. Ex. B1 at 69. In Case Number 2009-CF-14229, the trial court sentenced McCloud to a fifteen-year term of incarceration and ordered the sentence to run concurrently with the sentence imposed in Case Number 2009-CF-14321. Resp. Ex. C1 at 47-51.

McCloud appealed his convictions and sentences to Florida's First District Court of Appeal (First DCA). Resp. Exs. B1 at 78; C1 at 59. McCloud moved to consolidate his appeals in both cases, Resp. Ex. B4, which the First DCA granted, Resp. Ex. B5. On appeal, McCloud argued that the trial court erred in admitting the victim's child hearsay statement and fundamental error occurred when the prosecutor made statements and asked questions concerning McCloud's attempt to purchase narcotics. Resp. Ex. C9. The State filed an answer brief, Resp. Ex. B9, and McCloud filed a reply brief, Resp. Ex. C11. On July 19, 2012, the First DCA affirmed the convictions and sentences in a written opinion, Resp. Ex. B10, and issued the mandate on August 6, 2012, Resp. Ex. B11.

On July 12, 2013, McCloud filed in Case Number 2009-CF-14321 a pro se motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion). Resp. Ex. B12. McCloud argued that his sentences on counts one and two violated double jeopardy. Id. On February 22, 2016, the postconviction court denied relief. Resp. Ex. B13.

On February 7, 2014, McCloud filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which he later voluntarily amended. Resp. Ex. E1 at 1-56. The postconviction court dismissed the amended motion without prejudice and gave McCloud leave to amend. Id. at 57-59. McCloud filed another amended motion (Rule 3.850 Motion), in which

3

he alleged his counsel was deficient for failing to:  (1) object to the trial court's order permitting the admission of child hearsay; (2) object to the introduction of the child hearsay evidence; (3) object to the prosecutor and State witness vouching for the victim's credibility; (4) request a Richardson[3] hearing and call a witness; (5) withdraw as counsel due to a conflict of interest; (6) object to the prosecutor's questions asking McCloud if the victims were lying; (7) make proper closing arguments; and (8) adequately argue a motion for judgment of acquittal.  Id. at 62-91. McCloud also raised two grounds for relief related to the cumulative effect of counsel's errors. Id. The circuit court denied relief. Id. at 311-26. The First DCA per curiam affirmed the denial of relief. Resp. Ex. E6. Following the denial of McCloud's motion for rehearing, Resp. Ex. E8, the First DCA issued the mandate on February 28, 2019, Resp. Ex. E9.

### III. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct

---

[3] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

"Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). A petitioner establishes equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and

5

prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting

Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "As with any litigant, pro se

litigants 'are deemed to know of the one-year statute of limitations'" and,

therefore, "confusion or ignorance about the law" does not constitute

extraordinary circumstances. Perez v. Florida, 519 F. App'x 995, 997 (11th Cir.

2013) (citations omitted).

In McQuiggin v. Perkins, 569 U.S. 383, 386 (2013), the United States

Supreme Court held that a claim of actual innocence, if proven, provides an

equitable exception to the one-year statute of limitations. The United States

Supreme Court explained:

> We hold that actual innocence, if proved, serves as a
> gateway through which a petitioner may pass whether
> the impediment is a procedural bar, as it was in
> Schlup[4] and House,[5] or, as in this case, expiration
> of the statute of limitations. We caution, however,
> that tenable actual-innocence gateway pleas are rare:
> "[A] petitioner does not meet the threshold
> requirement unless he persuades the district court
> that, in light of the new evidence, no juror, acting
> reasonably, would have voted to find him guilty
> beyond a reasonable doubt." Schlup, 513 U.S., at 329,
> 115 S.Ct. 851; see House, 547 U.S. at 538, 126 S.Ct.
> 2064 (emphasizing that the Schlup standard is
> "demanding" and seldom met). And in making an
> assessment of the kind Schlup envisioned, "the timing
> of the [petition]" is a factor bearing on the "reliability
> of th[e] evidence" purporting to show actual innocence.
> Schlup, 513 U.S., at 332, 115 S.Ct. 851.

---

[4] Schlup v. Delo, 513 U.S. 298 (1995).

[5] House v. Bell, 547 U.S. 518 (2006).

6

Id. at 386-87. Importantly, the Court has "emphasized that the miscarriage of justice exception is concerned with actual as compared to legal innocence." Sawyer v. Whitley, 505 U.S. 333, 339 (1992).

Respondents assert that this action is timely as to Case Number 2009-CF-14321, but untimely as to Case Number 2009-CF-14229. Response at 6-8. According to Respondents, McCloud's Rule 3.800(a) Motion was only filed in Case Number 2009-CF-14321, which coupled with his Rule 3.850 Motion, sufficiently tolled the statute of limitations period prior to instituting this action. Id. However, because McCloud did not file the Rule 3.800(a) Motion in Case Number 2009-CF-14229, the statute of limitations expired in that case prior to McCloud filing his Rule 3.850 Motion. Id.

McCloud argues that because these cases were consolidated for trial and on direct appeal, both cases "should be afforded the same chance at relief considering they are still consolidated." Reply at 16. He further argues that he should be entitled to equitable tolling because he is proceeding pro se and is ignorant of the applicable laws. Id. McCloud also asserts that the failure to address his claims would result in a miscarriage of justice because he is actually innocent. Id. In support, McCloud contends that the jury never got to hear a recorded statement from his son, C.M., which he claims rebuts the testimony of the victims. He also asserts that he has a "suspicion that critical

7

physical evidence, which is the DNA Rape Kit's result," was not disclosed to him. According to McCloud, he is also actually innocent because the prosecutor conditioned prospective jurors during voir dire that he could be guilty without physical evidence. Id.

As mentioned above, the First DCA affirmed McCloud's conviction in both cases on July 19, 2012. Resp. Ex. B10. McCloud had ninety days to file a petition for writ of certiorari with the United States Supreme Court. See Chamblee v. Florida, 905 F.3d 1192, 1198 (11th Cir. 2018). He did not seek further review; therefore, his judgment became final for purposes of the one-year statute of limitations on October 17, 2012. As such, McCloud had until October 17, 2013, to file a federal habeas petition, unless he could take advantage of § 2244(d)(2)'s tolling provision.

On July 12, 2013, 268 days into the one-year limitations period, McCloud filed the Rule 3.800(a) Motion in Case Number 2009-CF-14321, which tolled the statute of limitations in that case. Resp. Ex. B12. That motion was pending until February 22, 2016, when the postconviction court denied relief. Resp. Ex. B13. However, before the statute of limitations period could restart in Case Number 2009-CF-14321, McCloud initiated Rule 3.850 proceedings in both cases on February 7, 2014, which again tolled the statute of limitations in Case Number 2009-CF-14321. Resp. Ex. E1 at 1-56. The denial of relief on his Rule 3.850 Motion became final on February 28, 2019. Resp. Ex. E9; see also Nyland

v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (noting pursuant to Florida law, a circuit court's denial of a postconviction motion is pending until the district court of appeal's mandate is issued). McCloud initiated the instant action seventy-seven days later on May 16, 2019. As only 345 un-tolled days passed since his judgment in Case Number 2009-CF-14321 became final, this action is timely as to that case.

However, as to Case Number 2009-CF-14229, the statute of limitations period expired prior to McCloud filing a postconviction motion in that case. As McCloud did not file the Rule 3.800(a) Motion in that case, he did not have a properly filed postconviction motion pending before October 17, 2013, and thus, cannot take advantage of § 2244(d)(2)'s tolling provision. See Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (holding "[a] state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Therefore, this action is untimely as to Case Number 2009-CF-14229.

Regarding McCloud's argument that this action is timely as to Case Number 2009-CF-14229 because his two cases were consolidated for trial and on direct appeal, the Court finds no basis of law to support this argument. How a state court manages its docket for purposes of a trial or appellate direct review does not alter a federal petitioner's duties to comply with § 2244(d). The consolidation for trial and direct review does not change the fact that these two

cases had separate charges, convictions, and sentences. Thus, they are separate judgments for purposes of federal habeas review.

Next, as to McCloud's argument for equitable tolling, he has failed to show an entitlement to such equitable relief. See Perez, 519 F. App'x at 997; Whiddon v. Dugger, 894 F.2d 1266, 1267 (11th Cir. 1990) (holding a petitioner's pro se status and poor advice by inmate law clerks did not establish cause for purposes of overcoming procedural default). Lastly, as to McCloud's miscarriage of justice argument, the Court finds he has failed to establish his actual innocence. McCloud's argument concerning what could have been in a DNA Rape Kit is insufficient to establish the existence of a miscarriage of justice. He offers nothing more than speculation that there would be evidence to exonerate him; however, such speculation does not constitute "reliable" evidence for purposes of establishing actual innocence. See Hammond v. Patterson, No. 1:12CV935-TMH, 2014 WL 2617276, at *3 (M.D. Ala. May 20, 2014), report and recommendation adopted, No. 1:12-CV-935-TMH, 2014 WL 2616212 (M.D. Ala. June 11, 2014) (concluding that claim of actual innocence based on the speculative possibility that DNA testing of evidence might reveal potentially exculpatory evidence was insufficient to establish actual innocence). McCloud's contention that the prosecutor impermissibly conditioned prospective jurors during voir dire also does not establish McCloud's factual innocence, as this assertion does not constitute evidence and

is simply a legal argument challenging his conviction. See Sawyer, 505 U.S. at 339.

McCloud's last argument in support of his actual innocence is his claim that the jury never got to hear a recorded statement from C.M. Notably, McCloud has failed to provide the Court with this recorded statement or any evidence to support that C.M. actually made the statements McCloud alleges he made. As such, McCloud has failed to present reliable evidence in support of his assertion. Moreover, in the Amended Petition, McCloud alleges that C.M. would have only been able to provide conflicting testimony regarding D.M.'s testimony concerning an uncharged event. Amended Petition at 59-64. As C.M.'s testimony would not have established McCloud's factual innocence as to the charged offense in Case Number 2009-CF-14229, McCloud has failed to establish his actual innocence. In light of the above analysis, this action is due to be dismissed to the extent it attacks McCloud's conviction and sentence in Case Number 2009-CF-14229. With this in mind, the Court will address the claims raised in the Amended Petition to the extent they challenge McCloud's conviction and sentence in Case Number 2009-CF-14321.

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to

11

grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [McCloud's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The AEDPA governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court

12

decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S.

14

Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[6] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

---

[6] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme

16

> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan</u>
> <u>v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies

results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of

procedural default as follows:

> Federal habeas courts reviewing the constitutionality
> of a state prisoner's conviction and sentence are guided
> by rules designed to ensure that state-court judgments
> are accorded the finality and respect necessary to
> preserve the integrity of legal proceedings within our
> system of federalism. These rules include the doctrine
> of procedural default, under which a federal court will
> not review the merits of claims, including
> constitutional claims, that a state court declined to
> hear because the prisoner failed to abide by a state
> procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[7] <u>supra</u>, at 747–
> 748, 111 S. Ct. 2546; <u>Sykes</u>,[8] <u>supra</u>, at 84–85, 97 S.
> Ct. 2497.  A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes federal
> review of the claims if, among other requisites, the
> state procedural rule is a nonfederal ground adequate
> to support the judgment and the rule is firmly
> established and consistently followed. <u>See</u>, <u>e.g.</u>,
> <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–
> 1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558
> U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417
> (2009). The doctrine barring procedurally defaulted

---

[7] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[8] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[9] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[9] Murray v. Carrier, 477 U.S. 478 (1986).

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby

prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person
> challenging a conviction must show that "counsel's
> representation fell below an objective standard of
> reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.
> Ct. 2052.  A court considering a claim of ineffective
> assistance must apply a "strong presumption" that
> counsel's representation was within the "wide range"
> of reasonable professional assistance. <u>Id.</u>, at 689, 104
> S. Ct. 2052. The challenger's burden is to show "that
> counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant
> by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must
> demonstrate "a reasonable probability that, but for
> counsel's unprofessional errors, the result of the
> proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine
> confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.
> It is not enough "to show that the errors had some
> conceivable effect on the outcome of the proceeding."
> <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be
> "so serious as to deprive the defendant of a fair trial, a
> trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct.
> 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part

<u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

20

court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds

21

another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, McCloud argues that the cumulative impact of his trial counsel's errors prejudiced him at trial. Amended Petition at 24-44. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). As the Court explains below, each of McCloud's individual claims lack merit. Therefore, his claim of cumulative error fails. See id. Accordingly, relief on the claim in Ground One is due to be denied.

### B. Ground Two

McCloud asserts that his trial counsel was deficient for failing to withdraw when she became aware of a conflict of interest. Amended Petition at 45-55. He alleges his counsel, a former prosecutor, suffered from a conflict of interest because in her former role, she prosecuted McCloud on domestic violence charges, the victim of which was the mother of the victim in Case Number 2009-CF-14321, Marlaina Gut. Id. Although McCloud waived this

conflict prior to trial, he contends that he did so involuntarily. Id. McCloud asserts that counsel failed to advise him that the mother of one of the victims, who he characterizes as his counsel's former "client," would not be involved in his current criminal case Id. at 29-30. According to McCloud, the State called Gut as a witness, but his counsel failed to inform the trial court that Gut was her former "client" and that she needed to withdraw or zealously defend McCloud against Gut's testimony. Id. at 25, 29-30. McCloud maintains that counsel failed to withdraw or cross-examine Gut. Id. As to the latter point, McCloud asserts that his counsel's strategy at trial was that Gut influenced the victim to bring the charges against him. Therefore, he contends counsel should have developed this defense further via cross-examining Gut on her influence over the victim and Gut's mental health. Id. at 35-39.

Respondents contend that McCloud failed to properly exhaust this claim because he raised the claim here as violating the Sixth and Fourteenth Amendment but on appeal of the denial of his Rule 3.850 Motion, he asserted violations of the Fifth and Fourteenth Amendment. Response at 12-14. McCloud counters that both in the Rule 3.850 Motion and on appeal of the denial of the motion, he argued ineffective assistance of counsel; therefore, even though he may not have specifically cited to the Sixth Amendment he gave the state courts an opportunity to address the claim he raises here. Reply at 6-14.

23

The record reflects McCloud raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. E1 at 79-81. In his initial brief on appeal, McCloud challenged the denial of relief on this claim and alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights in the title of his section addressing this claim. Resp. Ex. E4 at 28-34. Although McCloud may not have specifically cited to the Sixth Amendment, he specifically argued his counsel's ineffectiveness in the same manner he does now. As such, he fairly presented this claim of ineffective assistance of counsel to the state courts. See Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (noting that "a petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts."). Based on this record, the Court concludes that McCloud properly exhausted the claim in Ground Two.

As the claim is exhausted, the Court next turns to whether deference is owed to the state court's adjudication of this claim. In denying relief, the postconviction court wrote:

> At the evidentiary hearing, counsel testified that she worked as an Assistant State Attorney for one year prior to her employment with the Public Defender. Counsel testified she did not prosecute a domestic violence case against Defendant prior to representing him, and had never met Ms. Gut prior to Defendant's felony case. During cross-examination, postconviction counsel presented the charging document from Defendant's domestic violence case, containing counsel's name. Counsel testified she was the division chief at the time she worked at the Office of the State

24

Attorney, but had no recollection of working on the
domestic violence case despite her name on the
document. Counsel testified that she did not know
anything about the domestic violence case so it did not
impact her representation of Defendant. During
Defendant's testimony at the evidentiary hearing, he
testified the trial court made him aware of this
conflict. A transcript from a pretrial status hearing
held on March 31, 2010 reveals that the trial court did
make Defendant aware of the conflict and Defendant
knowingly, voluntarily, and intelligently waived the
conflict.

The Court finds Defendant has failed to meet his
burden of demonstrating an actual conflict of interest
affected counsel's performance. It is clear from her
testimony at the evidentiary hearing and a review of
the trial transcripts that counsel zealously
represented Defendant. Defendant maintains this
conflict prevented counsel from cross-examining Ms.
Gut during her rebuttal testimony. Counsel, however,
gave a reasonable explanation for her decision not to
cross-examine Ms. Gut during her rebuttal testimony,
refuting Defendant's argument that the conflict of
interest hindered her performance in his case.
Further, Defendant waived the conflict prior to
counsel beginning work on his case. The Court finds
no actual conflict of interest existed to warrant relief
under Strickland. Accordingly, Defendant is not
entitled to relief.

Resp. Ex. E1 at 320-21 (footnotes and record citations omitted). The First DCA

affirmed the denial of relief without a written opinion. Resp. Ex. E6.

25

To the extent that the First DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, McCloud is not entitled to relief on the basis of this claim.

The Eleventh Circuit has explained that:

> To establish a violation of the defendant's Sixth Amendment right to counsel based on a conflict of interest, a defendant must demonstrate: "(a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected his attorney's performance." Reynolds v. Chapman, 253 F.3d 1337, 1342 (11th Cir. 2001) (citing Cuyler v. Sullivan, 446 U.S. 335, 348-49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). The "mere possibility of conflict of interest does not rise to the level of a Sixth Amendment violation." Buenoano v. Singletary, 74 F.3d 1078, 1086 (11th Cir. 1996). To show an actual conflict of interest, a habeas petitioner "'must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action ...' that favors an interest in

---

[10] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

competition with that of the defendant. 'If [counsel] did not make such a choice, the conflict remained hypothetical.'" Id. at 1086 n.6 (quoting Smith v. White, 815 F.2d 1401, 1404 (11th Cir. 1987)); see also Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999) (en banc) ("An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" (quoting Smith, 815 F.2d at 1405)). "To prove adverse effect, a habeas corpus petitioner must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." Pegg v. United States, 253 F.3d 1274, 1278 (11th Cir. 2001).

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 796 (11th Cir. 2020).

The record reflects that on March 31, 2010, counsel disclosed to the trial court that she previously prosecuted McCloud for domestic violence, that she spoke to McCloud about the matter, and McCloud was "wiling to waive any sort of conflicts." Resp. Ex. E1 at 596. The trial court then inquired with McCloud about whether he was willing to waive the conflict and McCloud represented that he was waiving the conflict. Id. at 596-97. Based on this record, the circuit court was correct to conclude that McCloud waived this conflict of interest. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) (a defendant's "[s]olemn declarations in open court carry a strong presumption of verity."); Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court). McCloud's waiver of

this conflict defeats his claim that counsel was ineffective for failing to withdraw due to this conflict.

Moreover, even if McCloud had not waived this conflict, he has failed to establish that the conflict adversely affected his counsel's performance. McCloud has not demonstrated that counsel had inconsistent interests between him and Gut. According to McCloud, counsel's failure to cross-examine Gut showed the adverse effect of the conflict. However, at the evidentiary hearing, counsel testified that she did not think it was wise to cross-examine Gut. Counsel thought cross-examination could have potentially opened the door to more damaging testimony concerning marital problems between McCloud and Gut. Resp. Ex. E1 at 327-28, 631, 638-42. Instead, counsel believed a strategy down-playing the short rebuttal testimony would work better for the defense. Id. The Court finds that this strategy was reasonable. McCloud has failed to demonstrate that counsel had a competing interest regarding Gut, let alone that the competing interest led counsel to choose the strategy she did. As such, he cannot demonstrate an adverse effect. In light of the above analysis, the claim for relief in Ground Two is due to be denied.

## C. Ground Three

Next, McCloud contends that his trial counsel was ineffective for failing to request a Richardson hearing or move for a mistrial based on allegedly

undisclosed testimony from one of the victims, D.M., and Gut. Amended Petition at 56-73. Specifically, McCloud contends that D.M.'s testimony "that on a date unspecific [sic], she was forced to perform oral sex on Movant in order to be allowed to go to the swimming pool" was not properly disclosed. Id. at 56. Additionally, D.M. "testified that C.M. was present during the incident and was told by D.M. that she had to comply with Movant's demands because she had promised A.O. that they would be going to the pool together." Id. As to Gut, she testified in rebuttal to McCloud's trial testimony that she and he were not watching a movie together during the time D.M. alleged McCloud molested her. Id. at 64-72. According to McCloud, this testimony was false and never disclosed, and counsel should have requested a Richardson hearing and raised a Giglio[11] violation. Id. McCloud also argues that counsel should have called C.M. as a witness to rebut the testimony of Gut and D.M. Id. at 59-64, 67.

Respondents contend that McCloud failed to exhaust this claim because at the evidentiary hearing he waived the portion of the claim regarding a Richardson hearing. Response at 14-17. Additionally, Respondents argue that McCloud failed to cite to any federal statutes or case law in the Rule 3.850 Motion and otherwise failed to argue a violation of the federal constitution. Id.

---

[11] Giglio v. United States, 405 U.S. 150 (1972) (holding a prosecutor violates a defendant's due process rights where he or she knowingly presented false testimony).

McCloud counters that his arguments presented in the Rule 3.850 Motion and on appeal put the state courts on notice that he was alleging an ineffective assistance of counsel claim under <u>Strickland</u>. Reply at 6-14.

The record reflects that McCloud raised a similar claim of ineffective assistance of counsel in his Rule 3.850 Motion, Resp. Ex. E1 at 73-78, and argued the matter in his initial brief, Resp. Ex. E4. The fact that McCloud failed to specifically cite federal case law is not determinative, particularly in light of the fact that <u>Strickland</u> governs claims of ineffective assistance of counsel generally. <u>See</u> <u>Preston</u>, 785 F.3d at 457. As such, McCloud afforded the state court an opportunity to address the merits of the instant claim. However, as it relates to Respondents' waiver argument, the Court agrees that McCloud, through postconviction counsel, waived his argument that counsel was ineffective for failing to request a <u>Richardson</u> hearing as to Gut's testimony. At the evidentiary hearing on McCloud's Rule 3.850 Motion, counsel represented the following to the postconviction court:

> The Richardson issue of Ms. Gut. I've discussed with my client and I think we can concede that that was not a proper time to request a Richardson hearing. The State did not have a duty to disclose Ms. Gut prior to trial because she was not at issue; therefore, you know, they had a right to call her and we can concede that issue as to the Richardson hearing of Ms. Gut.

Resp. Ex. E1 at 678. Based on this representation, McCloud waived his argument as to the need to request a <u>Richardson</u> hearing as to Gut's testimony. Therefore, this portion of the claim is due to be dismissed as unexhausted.

Turning next to the portions of the claim that McCloud properly exhausted, the record reflects that the postconviction court denied relief. <u>Id.</u> at 315-19. As to whether counsel should have requested a <u>Richardson</u> hearing as to D.M.'s testimony, the postconviction court explained:

> At the evidentiary hearing, counsel testified that her strategy at Defendant's trial was to show that family members influenced the minor victim to fabricate the claims against Defendant. Counsel testified she discussed this strategy with Defendant and he agreed with that course of action. Prior to trial, counsel deposed the minor victim and asked her about the things Defendant had her do to him, what Defendant did to her, and how many times. When the victim testified to incidents not disclosed in her deposition, counsel felt this information only strengthened the defense and, as such, did not ask for a <u>Richardson</u> hearing. Counsel testified she cross-examined the victim about the set-up of the bedroom for the same reason. Counsel stated if she had asked for a <u>Richardson</u> hearing it would have been detrimental to the strategy she formed for trial. During his testimony at the evidentiary hearing, Defendant stated that counsel discussed this strategy with him and that he agreed. Upon review of the transcripts and hearing counsel's testimony as to her strategy, the Court finds counsel's decision not to ask for a <u>Richardson</u> hearing strategic and reasonable. Thus, counsel was not deficient, and Defendant is not entitled to relief.
>
> Notably, the State argues in its Response that the Amended Information charged Defendant with

> committing a sexual battery and a lewd or lascivious
> act upon the victim "on more than one occasions."
> Thus, the State maintains it did not commit a
> discovery violation and [D.M.'s] testimony was
> consistent with the charges alleged in the Amended
> Information. The Court finds that even if counsel had
> objected it would have been meritless.

Id. at 316-17 (record citations omitted). As to counsel's alleged failure to call

C.M. as a witness, the postconviction court wrote:

> Following the conclusion of his case, the trial court had
> a colloquy with Defendant regarding whether he
> wanted any further witnesses presented on his behalf
> or had any other questions he wanted his lawyers to
> raise in his case. Defendant stated under oath that he
> did not. Accordingly, Defendant cannot now go behind
> his sworn testimony to allege counsel was ineffective
> for failing to call witnesses at trial when Defendant
> made the decision not to call any further witnesses.
> See Thomas v. State, 838 So. 2d 535, 541 (Fla. 2003)
> (affirming denial of ineffective assistance of counsel
> claim where trial court found that defendant agreed
> not to call a witness and thus, could not claim
> ineffective assistance of counsel based on his decision);
> see also McIndoo v. State, 98 So. 3d 640, 641 (Fla. 4th
> DCA 2012); Hall v. State, 10 So. 3d 170, 172 (Fla. 5th
> DCA 2009). Accordingly, Defendant is not entitled to
> relief.

Id. at 317-18 (record citations omitted). The First DCA affirmed the denial of

relief without issuing a written opinion. Resp. Ex. E6.

To the extent that the First DCA decided the claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

32

and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, McCloud is not entitled to relief on the basis of this claim.

"In assessing an attorney's performance under Strickland, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Strickland, 466 U.S. at 690). The Court notes that "[t]he Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved," and "[i]ntensive scrutiny and second-guessing of attorney performance are not permitted." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90)). The Eleventh Circuit has explained that:

> Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).

The postconviction court determined counsel's actions in not requesting a Richardson hearing were strategic. McCloud has not provided clear and convincing evidence to overcome this factual determination; therefore, the Court assumes under § 2254(e)(1) this factual finding is correct. The Court finds that counsel's decision not to request a Richardson hearing was reasonable. At the evidentiary hearing on the Rule 3.850 Motion, counsel testified that she felt D.M.'s testimony concerning the pool incident was actually advantageous to the defense because it allowed her to further her argument that the victim was influenced by family. Resp. Ex. E1 at 625-26. Counsel felt that highlighting through cross-examination that D.M. failed to disclose the incident during her deposition would add additional support to the defense, as counsel was able to show the jury that D.M. changed her story multiple times through the course of the proceedings. Id. Based on this rationale, the Court finds counsel's strategy was reasonable, and, therefore, counsel did not provide deficient performance.

To the extent McCloud is raising a Giglio violation, he "must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have

affected the judgment." Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011) (quotation marks and ellipsis omitted). Mere inconsistency in testimony is insufficient to establish a Giglio claim. United States v. Stein, 846 F.3d 1135, 1149 (11th Cir. 2017). Here, McCloud has failed to prove either that the testimony was false or that the prosecutor knew it was false. The mere fact that the child victim did not disclose this specific incident during her deposition does not establish that she lied at trial. McCloud has not provided any additional facts to support his claim; therefore, he has failed to establish a Giglio violation.

Finally, as to whether or not counsel was ineffective for failing to call C.M. as a witness, the record refutes McCloud's argument. After the defense rested (and after D.M. gave the testimony at issue here), McCloud represented to the trial court that he had no other witnesses he wanted to call, no further questions he wanted his counsel to raise, and that he was satisfied with his counsel's performance. Resp. Ex. B3 at 258-59. Likewise, at the evidentiary hearing, counsel testified that McCloud never asked her to call C.M. as a witness. Resp. Ex. E1 at 648-49. In light of this record, McCloud's claim that he requested his counsel to call C.M. as a witness but she refused is refuted. Moreover, McCloud has not offered the Court any supporting evidence as to the substance of what C.M.'s testimony would have been. Accordingly, his claim of prejudice is entirely speculative. See McKiver v. Sec'y, Fla. Dep't of

Corr., 991 F.3d 1357, 1365 (11th Cir. 2021) (holding "that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness."). As such, McCloud has failed to establish his counsel was deficient for failing to call C.M. as a witness. For all of the foregoing reasons, relief on the claim in Ground Three is due to be denied.

### D. Grounds Four and Five

In both Grounds Four and Five, McCloud asserts claims regarding his counsel's failure to challenge the introduction of child hearsay evidence. As Ground Four, McCloud argues that counsel was ineffective because she did not object to the trial court's alleged failure to make specific findings when it granted the State's motion to admit child hearsay statements. Amended Petition at 74-81. McCloud contends that pursuant to Florida law, the trial court was required to make specific findings regarding the reliability of the child hearsay statement. Id. However, he asserts that the trial court instead merely adopted the reasoning the State proffered at the hearing and signed the order the State prepared on the matter. Id. According to McCloud, the findings the State enumerated were insufficient because they were conclusory and not case specific. Id. Concerning Ground Five, McCloud contends that his counsel also should have argued against the admission of the child hearsay evidence on the grounds that "it was offered only after the motivation to

36

fabricate was created by the new found attention being lavished upon the child by the aunt, mother and family and friends." Id. at 85.

Respondents contend both claims are unexhausted because McCloud failed to cite to any federal law or caselaw when he presented this issue on appeal. Response at 17-22. McCloud contends he exhausted the claims because he articulated claims of ineffective assistance of counsel in his Rule 3.850 Motion and argued the denial of relief on appeal. Reply at 6-14. The record reflects that McCloud raised substantially similar claims in his Rule 3.850 Motion. Resp. Ex. E1 at 63-70. McCloud also raised the denial of relief of these claims on appeal. Resp. Ex. E4. Based on this record, the Court finds McCloud properly exhausted the claims. See Preston, 785 F.3d at 457.

The Court next examines whether the state court's ruling should be afforded deference. The postconviction court denied relief as to the claim in Ground Four, explaining:

> The Court finds counsel was not deficient for failing to object to the trial court's Order on child hearsay. Pursuant to section 90.803(23), Florida Statutes, and Townsend,[12] the trial court's Order was sufficiently detailed. As such, counsel was not deficient for failing to object to the trial court's Order. See Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010) (concluding counsel cannot be deemed ineffective for failing to make a meritless objection). Moreover, while the issue was not preserved for direct appeal, the First District Court of Appeal stated in its Mandate that the trial

_____

[12] Townsend v. State, 635 So. 2d 949, 975-58 (Fla. 1994)

37

> court's Order did contain sufficient findings.
> Accordingly, Defendant cannot establish he was
> prejudiced by counsel's failure to preserve the issue for
> appellate review. Defendant is not entitled to relief.

Resp. Ex. E1 at 313-14 (record citations omitted). As to the claim in Ground

Five, the postconviction court adopted the State's response. Id. at 314-15. The

State relied on the following reasoning for requesting denial of the relief:

> [T]he Defendant opines that his attorney should have
> objected to the admission of the child hearsay
> statement based upon it being an inadmissible prior
> consistent statement because the statement was not
> made until after there was a motive to fabricate. The
> Defendant cited to the Ortuno[13] case to support his
> argument that the child victim in the instant case had
> been raised by a mentally ill mother and that once she
> was living with her aunt in a more pleasant
> environment, she fabricated the story in order to
> remain with her aunt.
>
> In Ortuno, the victim testified that she hated
> living with the defendant and loved living with the
> Uhricks. . . . The court noted that her motivation and
> bias remained the same at trial as when she gave the
> statement as the victim was still living with her foster
> family. Id. The court also noted that the State offered
> no corroborating evidence of, or eyewitness to, the
> charged criminal acts. Id. Thus, the court refused to
> admit the victim's CPT interview and declared the
> victim's statement was inadmissible hearsay because
> it was a prior consistent statement that was made
> after there was a motive to [lie] and because there was
> no corroborating evidence. Id.
>
> In contrast, in the case sub judice, there was no
> evidence that the victim had a motive to fabricate, and

---

[13] Ortuno v. State, 54 So. 3d 1086, 1089 (Fla. 1st DCA 2011).

thus, her child hearsay statement was not inadmissible hearsay in the form of a prior consistent statement. Although, the victim stated during the second interview that she was living with her aunt, she clarified that it was just for a little while. [D.M.] also stated during the second interview that she was scared to 'say things' because she was afraid of going to foster care. During the trial [D.M.] testified that she was playing a lot of games at her aunt's house, but stated that most of the time she played the games with her brother because her aunt's son was a grown up in college. Furthermore, the victim testified about her motive for disclosure and stated that she disclosed to her aunt because of the counseling that she had been receiving since living with her aunt. Additionally, unlike the Ortuno victim who hated her prior family life, the victim in the case sub judice stated that her mom would come to visit her at her aunt's house and that she loved her dad. Similarly, unlike the Ortuno victim who testified she was frequently hungry at home as there was no food, the Defendant testified that on the day in question, the victim, her brother and the victim's friend played in the pool, shopped at Wal-Mart, ate pizza and watched a Disney movie. Again, unlike the Ortuno victim who was still living with her foster family at the time of the trial, the aunt in the instant case testified that at the time of the trial, the victim was no longer living with her and that the victim had been allowed to return to her mother approximately one year after she first began living with the aunt. Additionally, [D.M.] testified she was living with her mother, her brother CM and her new baby brother.

Finally, unlike the Ortuno case, in the case sub judice, there was corroborating and/or eyewitness testimony. Specifically, the victim's friend, [A.O.] testified that the Defendant did something bad to [D.M.] and then indicated that [D.M.] had to suck the Defendant's private part. [A.O.] also testified that the Defendant showed her his private part while in the

victim's brother's room. [A.O.] then testified that the Defendant tried to get her to suck his private part but that [D.M.] volunteered to take her place. [A.O.] stated that after [D.M.] volunteered to take her place, [D.M.] and the Defendant went into his bedroom and she looked and saw [D.M.] sucking the Defendant's private part. It was [A.O.] who first told about what had occurred as she told her mother a couple of days later.

Id. at 107-09 (record citations omitted). Without issuing a written opinion, the First DCA affirmed the denial of relief. Resp. Ex. E6.

To the extent that the First DCA decided the claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, McCloud is not entitled to relief on the basis of these claims.

As to the claim in Ground Four, prior to trial, the State filed a Notice of Child Hearsay Evidence seeking to admit testimony from Nicole Heise and Laura Dill concerning statements the victim made to them. Resp. Ex. B1 at 23. The trial court granted the request to admit the child hearsay testimony. Resp. Ex. B1 at 34-35. On direct appeal, McCloud argued that the trial court's child

hearsay order was insufficient under section 90.803(23), Florida Statutes. Resp. Ex. C9. In affirming McCloud's convictions and sentences, the First DCA opined that although McCloud failed to preserve the issue for appeal, the order contained "sufficient findings." Resp. Ex. B10. As McCloud could not establish fundamental error on direct appeal, his claim of prejudice fails. See Strickland, 466 U.S. at 694-95 (determining that the prejudice standard in ineffective assistance of counsel claims should be lower than an outcome-determinative standard under which a reviewing court must conclude whether an error more likely than not altered the outcome of the case); Chandler v. State, 848 So. 2d 1031, 1046 (Fla. 2003) ("Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the Strickland test."). Accordingly, because McCloud cannot demonstrate prejudice, relief on the claim in Ground Four is due to be denied.

Concerning the claim in Ground Five, McCloud relies on a Florida case, Ortuno, for the proposition that prior consistent statements are inadmissible when the statements were made after the existence of a fact indicating a motive to fabricate testimony. Amended Petition at 83. According to McCloud, D.M.'s second CPT interview occurred after she had been sent to live with her aunt. Id. He asserts that because D.M.'s mother had mental health issues and

41

because D.M. did not want to go into foster care, D.M. had a motive to fabricate her testimony prior to her second CPT interview in which she accused McCloud of lewd and lascivious behavior. Id.

The record reflects that D.M. had two interviews with CPT. Resp. Ex. B2 at 40-41. During the first interview, D.M. denied McCloud acted inappropriately towards her, but at the second interview she told the interviewer about McCloud's molestation of her. Id. At the time D.M. gave the second interview, she was living with her aunt, whom D.M. had confided in about the molestation and who called CPT after hearing the details. Id. However, at the time of trial, D.M. was again living with her mother and brothers. Id. at 31. McCloud has failed to establish that D.M. had a motive to lie. Her testimony at trial demonstrated that D.M. loved McCloud and did not want him to go to jail. Id. at 40, 48. Also, D.M. no longer lived with her aunt at the time of trial and would not have been able to given the fact that she had been reunited with her mother. Moreover, the evidence against McCloud did not come solely from D.M. One of D.M.'s friends, A.O., also personally observed McCloud expose himself and force D.M. to conduct oral sex on him. Id. at 43-47, 62-64. Of specific import to this issue, it was A.O. who told her mother about the incident and her mother then reported it to police, which started the investigation. Id. at 64-65. Based on this record, there is no evidence to suggest D.M. had a motive to fabricate and, even if she did, admission of the second

CPT interview would have been harmless in light of A.O.'s testimony. For the above reasons, the claim for relief in Ground Five is due to be denied.

### E. Ground Six

Lastly, McCloud contends that his counsel was deficient for failing to object to Nicole Heise's testimony that vouched for the victim's credibility. Amended Petition at 89-92. McCloud argues that counsel should have objected when Heise testified that she did not believe D.M. was truthful during D.M.'s initial interview with CPT, in which D.M. denied any sexual abuse. Id. According to McCloud, this created an inference that D.M.'s statements during the second CPT interview alleging molestation against McCloud were truthful, which is an improper opinion for an expert to give. Id. McCloud also contends that the prosecutors vouched for D.M.'s credibility during closing arguments. Id.

Respondents contend that McCloud did not raise this issue in his Rule 3.850 Motion and, therefore, did not exhaust this claim. Response 22-26. McCloud contends that he did exhaust this claim. Reply at 6-14. The record reflects that McCloud did in fact raise a substantially similar claim in this Rule 3.850 Motion. Resp. Ex. E1 at 71-72. He also raised the denial of relief on appeal. Resp. Ex. E4. In light of this record, McCloud properly exhausted this claim for relief. See Preston, 785 F.3d at 457.

Turning to the issue of whether deference should be afforded to the state court's adjudication of this claim, the postconviction court adopted the State's response in denying relief. Resp. Ex. E1 at 315. In the State's response, it argued the claim should be denied for the following reasons:

> An expert in the area of investigative interviewing possesses a unique ability, obtained through training, education and experience, to conduct effective information-gathering interviews with alleged child sexual abuse victims. Correia v. State, 695 So. 2d 461, 463 (Fla. 4th DCA 1997). An expert in the area of investigative interviewing would be able to assess the validity of the accusation by comparing the child's account of the sexual abuse with certain patterns commonly found in authentic accusations of abuse. Id. Although an expert may not directly vouch for the credibility of a witness, an expert may properly aid a jury in assessing the veracity of a victim of child abuse without usurping the jury's exclusive function by generally testifying about a child's ability to separate truth from fantasy; or by discussing various patterns of consistency in the stories of child abuse victims and comparing those patterns with patterns in the alleged victim's story. Id., citing Tingle v. State, 536 So. 2d 202, 205 (Fla. 1988), citing United States v. Azure, 801 F.2d 336, 340 (8th Cir. 1986) [sic]. Florida's Supreme Court reasoned that although by its very nature such expert testimony to some degree will tend to bolster or refute the credibility of the child victim; however, the ultimate conclusion as to the victim's credibility always will rest with the jury and the expert is merely equipping the jury with the knowledge necessary to make this determination. Id. Likewise, an expert may testify that it is common for children not to disclose everything at once as they will tell a little bit at a time, sometimes to test the waters to see how their parents will react and then they will go on and tell what else

happened to them. <u>Russ v. State</u>, 934 So. 2d 527, 531 (Fla. 3[d] DCA 2006).

In the instant case, Ms. Heise's testimony was consistent with an expert aiding a jury in assessing the credibility of a child abuse victim. Ms.Heise [sic] testified that she had been employed with the Child Protection Team for five years and had conducted over 700 forensic interviews with children. Ms. Heise was initially asked whether the interview was successful and she responded that she did not think that she had received an accurate history because the victim was very guarded and still upset. Ms. Heise also testified that she had specialized training in forensic interviewing, had a bachelor's degree in psychology and was working on her master's degree. Although Ms. Heise was asked whether [D.M.] was being truthful in the first interview, and Ms. Heise indicated she was not, she immediately reiterated that she did not believe she was receiving accurate information [D.M.] during the first interview. Specifically, Ms. Heise indicated that she based her answer on the fact the victim barely responded to any questions; barely interacted, even on neutral topics and appeared frightened. Ms. Heise also testified that based on her experience as a trained forensic interviewer, it is not unusual for a child to initially deny abuse because disclosing is a traumatic event. Ms. Heise noted that children usually disclose after they feel safe and secure. Ms. Heise testified that [D.M.]'s demeanor, interaction and communication in the second interview was markedly different than in the first interview. Ms. Heise testified [D.M.]'s behavior was consistent with a child victim in that she was embarrassed and uncomfortable talking about the abuse. Ms. Heise further testified that it is common for a child victim to act as [D.M.] did, such as hiding under the table or spelling out the answers to the questions, because they believe they are in trouble for disclosing the abuse. Ms. Heise also told the jury that an initial interview is usually not as forthcoming and usually

> does not contain full disclosure because disclosure is
> an ongoing process. Therefore, Ms. Heise's expert
> testimony did not exceed what the law allows in terms
> of her assisting the jury in determining the veracity of
> [D.M.]s testimony. Accordingly, the State submits that
> Ground 3 of the Defendant's Motion may be summarily
> denied as the Defendant has failed to demonstrate
> legal deficiency in his attorney's failure to object to Ms.
> Heise's testimony.

Id. at 110-12 (record citations omitted). The First DCA per curiam affirmed the

denial of relief without issuing a written opinion. Resp. Ex. E6.

The record reflects that the State presented evidence that McCloud

exposed himself to A.O. and A.O. witnessed D.M. performing a sexual act on

McCloud. Resp. Ex. B2 at 40-47, 60-65, 77-78. A.O. disclosed this information

to her mother, as a result of which an investigation ensued and Heise

interviewed D.M. Id. at 40-47, 91-129. D.M. denied McCloud acted improperly.

Id. After this first interview, D.M. was sent to live with her aunt. Id. at 84-85.

Following counseling, D.M. disclosed the sexual abuse to her aunt, who then

reported it to CPT. Id. at 86-87. Heise then conducted a second interview,

during which D.M. disclosed the sexual abuse. Resp. Exs. B2 at 129-74; Ex. B3

at 205-19. Both D.M. and A.O. testified at trial that McCloud sexually abused

D.M. and exposed himself to A.O. Resp. Ex. B2 at 33-47, 59-64. McCloud took

the stand and denied any improper conduct and testified that he was watching

a movie with his wife during the time frame D.M. and A.O. alleged. Resp. Ex.

B3 at 234-39. In rebuttal, the State called McCloud's wife, Gut, who testified

they did not watch a movie together the night of the incident and that she was actually asleep. Id. at 266-68.

Under Florida law, it is improper for an expert to opine directly on the credibility of a child sexual abuse victim's statement during a CPT interview. Tingle v. State, 536 So. 2d 202, 205 (Fla. 1988); Ramayo v. State, 132 So. 3d 1224, 1226-28 (Fla. 3d DCA 2014). At trial, the following exchange occurred during the direct examination of Heise:

> Q.    And was -- [the first interview] that you conduct of [D.M.] was that successful?
>
> A.    [D.M.] appeared really guarded and still upset and frightened, so I don't feel we got an accurate history from her at that time.
>
> Q.    Do you have an opinion on the truthfulness or the veracity of her statement that she made that day?
>
> A.    Excuse me?
>
> Q.    Do you have an opinion on the truthfulness of her statement that she made that day?
>
> A.    I don't feel she was truthful during that interview.
>
> Q.    And why is that?
>
> A.    She barely responded to my questions, barely interacted, just on neutral topics. She appeared frightened and I don't feel that that was accurate information during that interview.

Resp. Ex. B2 at 93-94 (emphasis added). Based on this record, it does appear as though Heise gave improper opinion testimony. <u>See</u> <u>Tingle</u>, 536 So. 2d at 205.

In light of the facts that the postconviction court's denial of relief rested on a finding that Heise did not give impermissible testimony and because the First DCA did not provide a written opinion, the Court presumes the First DCA affirmed the denial of relief based on the postconviction court's finding. <u>Wilson</u>, 138 S. Ct. at 1192. However, in light of <u>Tingle</u>, it does not appear as if deference should be owed to this adjudication. Nevertheless, under a <u>de novo</u> review, McCloud is not entitled to relief because he cannot demonstrate prejudice. <u>See</u> <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in <u>de novo</u> review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on <u>de novo</u> review."). Here, not only did D.M. testify at trial that McCloud sexually abused her, but there was an eyewitness, A.O., who also testified about McCloud's improper conduct. Moreover, the jury was given the opportunity to view both of the CPT interviews and could readily assess D.M.'s credibility based on these videos and the trial testimony. Additionally, the credibility of McCloud's trial testimony denying any wrongdoing was greatly diminished in light of Gut's rebuttal testimony. Based on this record evidence, there is no

reasonable probability the outcome of the trial would have been different had Heise never given the testimony in question and had the prosecutor never made comments based on that testimony. Accordingly, relief on the claim in Ground Six is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If McCloud seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, McCloud "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a

claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Amended Petition (Doc. 9) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.     If McCloud appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of January, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:      Dennis L. McCloud #J42841
        Counsel of record

51